United States Courts
Southern District of Texas
F I L E D

JUN 2 1 2024

Nathan Ochsner, Clerk of Court

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **KELVIN WASHINGTON,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **C.A. No._____** |
| | § | |
| v. | § | |
| | § | |
| **CCS ENTERPRISES, LLC** | § | |
| **d/b/a UNITED LOCATING** | § | |
| **SERVICES,** | § | |
| | § | |
| **Defendant.** | § | **(JURY TRIAL DEMANDED)** |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW, Plaintiff Kelvin Washington, filing his Original Complaint complaining of Defendant CCS Enterprises, LLC d/b/a United Locating Services and in support thereof would show as follows:

**I.
JURISDICTION, PARTIES, AND VENUE**

1.1　This Court has jurisdiction to hear the merits of Mr. Washington's claims under 28 U.S.C. §1331.

1.2　This action involves a federal question under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 1981, the Americans With Disabilities Act Amendments Act of 2008, as amended ("ADAAA"), and Age Discrimination in Employment Act ("ADEA").

1.3　Kelvin Washington resides in Houston, Texas. Plaintiff was at all relevant times an

1

employee within the meaning of the aforementioned applicable statute(s).

1.4    United Locating Services operates in Houston, Texas. Defendant was at all times Plaintiff's employer within the meaning of the aforementioned applicable statute(s). Defendant may be served with process by serving its registered agent, wherever it may be found.

1.5    The employment practices alleged to be unlawful herein were committed within the Southern District of Texas. Venue is appropriate in this Court.

## VICARIOUS LIABILITY – RESPONDEAT SUPERIOR

1.6    Whenever in this Petition it is alleged that the Defendant did any act or thing, it is meant that the Defendant United Locating Services of Texas owners, supervisors, or employees did such act and/or that at the time such act was done, it was done with the full authorization or ratification of the Defendant or was done in the normal and routine course and scope of employment of Defendant's owners, supervisors, or employees including but not limited to Regional Manager Derrick Myles, Human Resources Director Kristen Conners, Human Resources Aston Conner, Supervisor Paul, Dewayne Daniel, and Josh Stevens.

1.7    The acts of management were performed while in the employment of Defendant, to further Defendant's business, to accomplish the objectives for which said managers were hired, and within the course and scope of that employment or within the authority delegated to said employees.

## II.
## EXHAUSTION OF ADMINISTRATIVE REMEDIES

2.1    Plaintiff filed his amended Charge of Discrimination with the United States Equal

2

Employment Opportunity Commission dated June 6, 2023. In that Charge, and any amendments and/or attachments thereto, Plaintiff asserted that Defendant discriminated against him because of his age, disability, race and sex.

2.2    The EEOC issued Mr. Washington a notice of right to sue in a letter.

2.3    Thereafter, Plaintiff was forced to file this suit in order to protect his employment rights.

2.4    Plaintiff has exhausted his administrative remedies and files this suit within the statutory limitations period.

### III.
### FACTUAL BACKGROUND

3.1    Defendant hired Kelvin Washington (then about 58 years old, African American, male) on or about February 11, 2020 as a Utility Locator Tech.

3.2    Mr. Washington's supervisor was Regional Director Derrick Myles.

3.3    On or about March 30, 2020, Mr. Washington suffered a physical and psychological injury at work while in training.

3.4    To be sure, a supervisor directed Mr. Washington to knock on a residential door and ask if they could walk on the homeowner's yard to work.

3.5    Mr. Washington complied.

3.6    The homeowner gave Mr. Washington permission to enter his yard.

3.7    Mr. Washington could not help but to notice two (2) pit bulls tied to the homeowner's fence.

3.8    The homeowner assured Mr. Washington that the pit bulls were secure.

3.9    While working, Mr. Washington heard the chain rattle. To his utter surprise, one of the pit bulls broke loose and lunged at Mr. Washington's throat.

3.10   Mr. Washington instinctively lurched back, as he recalled staring death in the face.

3.11   Mr. Washington's quick action resulted in the pit bull biting his chest open.

3.12   Mr. Washington was treated for his physical injuries at a nearby hospital.

3.13   He was granted approximately three (3) days off work and referred to defendant's doctor of choice.

3.14   Mr. Washington filed for workers' compensation benefits.

3.15   Mr. Washington was also diagnosed with PTSD, among other things. He suffers from hyper vigilance, intrusive thoughts, nightmares, anxiety, permanent scars and functional limitations.

3.16   Based thereon, Mr. Washington's doctor recommended that he be accommodated by returning him to work and tasking him with light duty assignments including not working in the field given his psychological trauma thereto.

3.17   Mr. Washington was granted light duty work.

3.18   Mr. Washington set about trying to manage his new normal, which included extensive medical treatment, a host of medications, the lingering impact of his psychological injuries, the constant reminder brought on by his physical chest scars, and his new position.

3.19   Yet, there was no compassion from his employer. In fact, Supervisor Myles constantly harassed Mr. Washington including but not limited to calling him "crazy", telling him he is on "borrowed time", accusing him of "milking the system" and "conning" the insurance company with his injury claims, and admitting that defendant was "annoyed" with his light duty needs, among other things.

3.20   Mr. Washington began being further harangued via disciplinary actions. He responded

4

thereto including making a written report of discrimination.

3.21    Defendant treated Mr. Washington differently from his counterparts.

3.22    Mary Riddles is white and female. Her age and whether disabled is unknown.  She was injured by a dog. She suffered minor injuries. Defendant provided Ms. Riddles with an office job. Defendant did not harass Ms. Riddles. Defendant did not terminate Ms. Riddles.

3.23    Defendant also treated Ryan (last name unknown) more favorably. Mr. Ryan is white and male.  His age and whether disabled is unknown. He was injured.  Defendant provided Mr. Ryan with another position. Defendant did not harass Mr. Ryan. Defendant did not terminate Mr. Ryan.

3.24    Regional Manager Myles continued to harass Mr. Washington including but not limited to reducing his hours, working him in excessive heat, and assigning him demeaning work including cleaning the restrooms.

3.25    Mr. Washington continued to make reports about the maltreatment.

3.26    On or about June 8, 2022, Mr. Washington was summoned into a meeting with Supervisor Myles, Dewayne Daniel, and John Stevens. The men stood in a threatening manner. They informed Mr. Washington that he could either i) report back to field work or ii) be terminated.

3.27    Mr. Washington explained his medical condition and doctor's recommendations of not returning to field work.

3.28    Mr. Washington felt threatened and went home.

3.29    Mr. Washington called the defendant the next day and was told they would call when they needed him. Mr. Washington believed that he was still an active employee awaiting

his next assignment. Moreover, Defendant did not tell Mr. Washington that he had been terminated.

3.30    On or about July 25, 2022, Mr. Washington began inquiring about how to obtain funds from his 401(k) account.

3.31    Mr. Washington was given the run around. It took approximately two months to receive any assistance.

3.32    During this time, Mr. Washington still had access to his ADP account and it showed he was still an active employee.

3.33    Mr. Washington was forced to seek legal counsel to access his 401(k) funds.

3.34    Mr. Washington learned he was terminated as of August 9, 2022.

3.35    The effect of the practices complained about herein has been to deprive Mr. Washington of equal employment opportunities and otherwise adversely affect his status as an employee because of his race, age, disability and sex.

## IV.
## CAUSES OF ACTION

### A. RACE DISCRIMINATION PER 42 U.S.C. SECTION 1981 & TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

4.1    Plaintiff repeats and re-alleges by reference each and every allegation contained in the paragraphs above and incorporate the same herein as though fully set forth.

4.2    Defendant, through its owners, supervisors, or employees, violated Plaintiff's civil rights in violation of 42 U.S.C. Section 1981 and Title VII as outlined above.

4.3    This intentional interference consisted of race discrimination of a continuous nature that included differential treatment, offensive words, deeds, stereotypes, career sabotage, denial of a workable position, denial of accommodations, denial of work hours,

exclusions, intimidation, and termination.

4.4    Such conduct led to the loss of wages, benefits, privileges, and opportunities.

4.5    The above-described acts caused Plaintiff substantial harm and losses.

## B. SEX DISCRIMINATION PER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

4.6    Plaintiff repeats and re-alleges by reference each and every allegation contained in the paragraphs above and incorporate the same herein as though fully set forth.

4.7    Defendant, through its owners, supervisors, or employees, violated Plaintiff's civil rights in violation of Title VII as outlined above.

4.8    This intentional interference consisted of gender discrimination of a continuous nature that included differential treatment, offensive words, deeds, stereotypes, career sabotage, denial of a workable position, denial of accommodations, denial of work hours, exclusions, intimidation, and termination.

4.9    Such conduct led to the loss of wages, benefits, privileges, and opportunities.

4.10    The above-described acts caused Plaintiff substantial harm and losses.

## C. DISABILITY DISCRIMINATION PER ADAAA

4.11    Plaintiff repeats and re-alleges by reference each and every allegation contained in the paragraphs above and incorporate the same herein as though fully set forth.

4.12    Defendant, through its owners, supervisors, or employees, violated Plaintiff's civil rights in violation of ADAAA as outlined above by discriminating against him based on his actual disability (PTSD, anxiety, and other conditions outlined above), record of disability, and was regarded as having a disability in violation of the ADAAA.

4.13    This intentional interference consisted of disability discrimination of a continuous nature that included differential treatment, offensive words, deeds, stereotypes, career

sabotage, denial of a workable position, denial of accommodations, denial of work hours, exclusions, intimidation, and termination.

4.14    Such conduct led to the loss of wages, benefits, privileges, and opportunities.

4.15    The above-described acts caused Plaintiff substantial harm and losses.

### D. AGE DISCRIMINATION PER ADEA

4.16    Plaintiff repeats and re-alleges by reference each and every allegation contained in the paragraphs above and incorporate the same herein as though fully set forth.

4.17    Defendant, through its owners, supervisors, or employees, violated Plaintiff's civil rights in violation of ADEA as outlined above.

4.18    This intentional interference consisted of age discrimination of a continuous nature that included differential treatment, offensive words, deeds, stereotypes, career sabotage, denial of a workable position, denial of accommodations, denial of work hours, exclusions, intimidation, and termination.

4.19    Such conduct led to the loss of wages, benefits, privileges, and opportunities.

4.20    The above-described acts caused Plaintiff substantial harm and losses.

### E. WORKERS' COMPENSATION RETALIATION PER TEXAS LABOR CODE

4.21    Plaintiff incorporates by reference the allegations of the preceding paragraphs.

4.22    Defendant discriminated against and discharged Plaintiff in retaliation for Plaintiff's instituting a claim under the Texas Workers' Compensation Act and seeking benefits under the Act.  Specifically, Defendant subjected Plaintiff to differential treatment, a negative attitude, stereotypes, aggressions, mockery, denial of accommodations, threats, and termination.

8

4.23    Such harassment and termination violated §451.001, *et seq.*, of the Texas Labor Code and was illegal. As a proximate result of this unlawful act, Plaintiff suffered damages.

4.24    The above-described acts caused Plaintiff substantial harm and losses.

## V.
## DAMAGES

5.1    Defendant's conduct constitutes violations of statutory law. Such unlawful conduct seriously impacts Plaintiff in his occupation, trade, and business. Because of Defendant's unlawful conduct, Plaintiff has suffered, suffers, and will continue to suffer PTSD, humiliation, mental anxiety and stress, and other damages. Accordingly, Plaintiff seeks all general, special, incidental, economic, compensatory, and consequential damages in an amount to be proved at trial including punitive damages.

5.2    Because of Defendant's unlawful conduct, Plaintiff is seeking an attorney to represent him and will want Defendant to pay said attorney fees upon a finding in his favor or based on any other appropriate manner.

5.3    Additionally, Plaintiff has incurred out-of-pocket expenses, which includes litigation costs and other expenses. Accordingly, Plaintiff seeks all such costs and expenses proven at trial.

5.4    Further, Plaintiff seeks pre-judgment interest at a rate commensurate with the actual rate of interest in the marketplace or, alternatively, the statutory rate of interest because of the delay in receiving the damages and to avoid unjust enrichment to Defendant. Plaintiff also seeks post-judgment interest at the maximum rate allowed by law in the event that Defendant does not promptly tender damages assessed against them and to avoid unjustly enriching Defendant.

9

## VI.

WHEREFORE, premises considered, Plaintiff prays that Defendant be cited to appear and answer herein, and that on final trial, Plaintiff have judgment against Defendant for:

a.  Permanent injunction enjoining Defendant, its agents, successors, and those acting in consort with Defendant from engaging in any employment practices which discriminates on the basis of race, age, disability and gender as outlined above;

b.  All damages to which Plaintiff may be entitled pursuant to this Complaint, or any amendment(s) thereto, including but not limited to back pay, reinstatement or front pay in lieu of reinstatement, loss of earnings in the past, loss of earning capacity in the future, loss of benefits in the past, loss of benefits in the future, statutory relief at law, and equity;

c.  Compensatory damages for pain and mental suffering in the past and future;

d.  Punitive damages;

e.  Reasonable attorneys' fees, with conditional awards in the event of appeal;

f.  Pre-judgment interest at the highest rate permitted by law;

g.  Post-judgment interest from the judgment until paid at the highest rate permitted by law;

h.  Costs of court and expert witness fees incurred by Plaintiff in the preparation and prosecution of this action; and

i.  Such other and further relief, at law or in equity, to which Plaintiff may be entitled, whether by this complaint or any amendment hereto.

Respectfully submitted,

/s/

10

Kelvin Washington
3730 Lyons Ave. #104
Houston, Texas 77020
Telephone: (713) 972-5867
Kelvinwashington915@gmail.com